Date signed May 25, 2010



**ROBERT A. GORDON**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| Cateania Matthews | * | Case No. 07-21117-RAG |
| Debtor | * | Chapter 13 |
| *   *   *   *   *   * | * | |
| Scotch Bonnett Realty Corporation | * | |
| Plaintiff | * | |
| vs. | * | Adversary No. 07-00926 |
| Cateania Matthews, *et al.* | * | |
| Defendants | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION

## I.      Introduction

After careful deliberation, the Court has decided that the resolution of this adversary proceeding would be significantly aided by the certification to the Court of Appeals of Maryland of the question of law presented. This is so because the Court has concluded that given the facts,

there is no persuasively controlling appellate decision and that the Court of Appeals' answer to the certified question should be determinative of the thorny legal issue presented in this case.

## II.      Certified Question

Does the use of a deed that is neither a forged document, nor signed with a forged signature, but which derives its transactional vitality from forged corporate articles of amendment, render a conveyance of land void *ab initio,* or, is good title transferred to *bona fide* purchasers for value without notice?

## III.      Procedural History

This adversary proceeding began in the Circuit Court for Baltimore City (Circuit Court) on June 16, 2006. It was removed to the Bankruptcy Court on November 19, 2007 after Debtor-Defendant Cateania Matthews (Debtor) filed for relief under Chapter 13 on November 6, 2007.  A Notice of Removal was filed on November 19, 2007 (Dkt. No. 1) and an Order upon Notice of Removal to Bankruptcy Court was entered on November 28, 2007 (Dkt. No. 7).

After obtaining leave of the Court, Plaintiff Scotch Bonnet Realty Corporation's (Plaintiff or SBRC) Fourth Amended Complaint for Declaratory Relief, to Quiet Title, for Injunctive Relief, Fraud, Conversion, to Determine Dischargeability of the Debt and for Damages (Amended Complaint) (Dkt. No. 54) against the Debtor, Emora Horton (Mr. Horton), Gerard Vetter (Mr. Vetter or Trustee)[1], Cory Johnson (Mr. Johnson), Halvaot, LLC (Halvaot), Tax Lien 2000, LLC (Tax Lien 2000) and Washington Mutual Bank (WMB) was filed on August 1, 2008.[2]

---

[1] Mr. Vetter is one of four standing Chapter 13 Trustees in the District of Maryland.  He was appointed Trustee in the Debtor's main bankruptcy case (Case No. 07-21117) by the U.S. Trustee's Office upon its filing.  By operation of law, he has a colorable interest in the subject real estate. 11 U.S.C. § 1306.

[2] A Line was filed on October 17, 2008 (Dkt. No. 88) substituting JPMorgan Chase Bank, National Association (JPMorgan) for WMB as a result of JPMorgan's purchase of WMB's assets from the Receiver, Federal Deposit Insurance Corporation.

Starting on August 7, 2008 by the Trustee and ending on October 15, 2008 by the Debtor, answers were filed to the Amended Complaint by most, but not all, of the Defendants.[3]  Trial was held on October 20-21, 2008.

At the conclusion of the Plaintiff's case, Defendant JPMorgan moved for dismissal. Counsel stated:

> Your Honor, I guess I would like to take five minutes and just make a motion for dismissal – judgment of – motion for judgment of dismissal.
>
> As I understand the law, Your Honor, the subject instrument, the deed in question, is a fraudulent deed. It is not, however a forgery.

 Trial Tr. Oct. 21, 2008, 27: 3-8.

Counsel was relying upon the distinction that Maryland law draws between a deed that is forged and one fraudulently obtained. If the deed is forged, the transfer of property is void and subsequent transfers will be undone regardless of any knowledge or notice on the part of subsequent holders.  *Maskell v. Hill*, 55 A.2d 842, 846 (Md. 1947).  If, on the other hand, the deed is not forged but obtained through a fraudulent transaction, then a *bona fide* purchaser (BFP) without notice can rely upon the deed as if it was legitimate. *Harding v. Ja Laur Corp.*, 315 A.2d 132, 135 (Md. Ct. Spec. App. 1974).

---

[3] On March 4, 2008, Plaintiff filed its Third Amended Complaint for Declaratory Relief, to Quiet Title, for Injunctive Relief, fraud, conversion to Determine Dischargeability of Debt, and for Damages (Third Amended Complaint) (Dkt. No. 31).  Mr. Johnson, Ms. Matthews and Mr. Horton all failed to answer the Third Amended Complaint. The Plaintiff filed a Motion for Default against Ms. Matthews and Mr. Horton on June 24, 2008 (Dkt. No. 44) but not as to Mr. Johnson.  An Order Granting Motion for Default against Ms. Matthews and Mr. Horton was thereafter entered. On August 13, 2008, Ms. Matthews filed a Motion to Reconsider (Dkt. No. 58) which was granted at trial.  Her Answer to Complaint (Dkt. No. 77) was thereafter accepted for filing.  Count V of the Amended Complaint – seeking a non-dischargeable judgment against Ms. Matthews – was voluntarily dismissed by the Plaintiff at the close of its case in chief. Trial Tr. Oct. 21, 2008, 37:9-14.

Nevertheless, JPMorgan's motion was denied mainly because of non-Maryland case law indicating that the presence of a forged instrument – other than a deed or other document of title and transfer – in the chain of documents underlying a transfer can void the transaction even as to a BFP without notice. The question of law was put off until the end of trial to permit further briefing and reflection.[4] Trial Tr. Oct. 21, 2008, 35:4-9; 43:5-13.

The parties filed post-trial memoranda and argument was held on January 12, 2009. However, (1) because the facts are unusual, (2) the relevant cases are few and rather old and (3) the outcome depends upon a crucial interpretation of Maryland law, the Court has concluded for the reasons explained below that certification of the legal issue is warranted.

## IV.    Findings of Fact

Plaintiff SBRC owns several parcels of real property in Baltimore City. SBRC is a Maryland close corporation whose sole shareholder and director is Ms. Sandra Denton.  SBRC was incorporated on January 22, 2003 by the filing of Articles of Incorporation (Original Articles) with the Maryland State Department of Assessments and Taxation (SDAT).  The Original Articles listed 2129 St. Paul Street, Baltimore, Maryland 21218 as SBRC's principal office and further listed Richard J. Hackerman of 116 West University Parkway, Baltimore, Maryland 21210 as the corporation's resident agent.

In pertinent part, the Original Articles provide:

> SEVENTH: The Corporation elects to have no Board of Directors, which election shall become effective as of the organizational meeting of the Corporation. The name of the Director who shall act until such time as said election becomes effective is:

---

[4] At the same time, Plaintiff conceded that its evidence was insufficient to defeat JPMorgan's claim to BFP status although it continued to protest that status as to Halvaot.

SANDRA DENTON

Pl.'s Ex. 4, p. 4

Thus, by the terms of the only relevant corporate record, Ms. Denton was placed in charge of SBRC's affairs. SBRC's business was to purchase investment properties in the Baltimore area. In order to carry out that business, Ms. Denton consulted with her ex-husband, Mr. Horton.[5] Trial Tr. Oct 20, 2008, 70:1-2. He was tasked with finding suitable properties and if any came to his attention it was his job to advise Ms. Denton of the particulars. If she desired SBRC to make a purchase, she would provide the financing.  In the case of a sale of real estate by SBRC, net proceeds went directly to SBRC's corporate bank account. Ms. Denton was the sole signatory of that account.  She acknowledged during cross-examination that Mr. Horton had other duties and obligations for SBRC, including day-to-day management, property repair and upkeep.[6]  Trial Tr. Oct. 20, 2008, 92:9-12.

Ms. Denton had a handwritten paper with her at trial that identified all thirteen of the properties owned by SBRC. Trial Tr. Oct. 20, 2008, 110:19-111:17; Halvaot Def.'s Ex. 5. No other records of corporate activity – minutes, resolutions, etc. – were put into evidence. Trial Tr. Oct. 20, 2008, 103:15-104:4. SBRC's business was not conducted in an overly formal manner and there was no evidence of any corporate bustle other than the purchase and sale of real estate at Ms.

---

[5] Ms. Denton and Mr. Horton were married on August 2, 2002.  Pl.'s Ex. 2.  They were thereafter divorced on December 23, 2003.  Pl.'s Ex. 3. Trial Tr. Oct. 20, 2008, 75:18-21.  Nevertheless, after Ms. Denton and Mr. Horton divorced, Mr. Horton assisted SBRC in buying and selling properties. Trial Tr. Oct. 20, 2008, 98:14-20.

[6] When appropriate, Ms. Denton would wire funds into Mr. Horton's personal bank account to allow him to acquire real estate and repair and maintain existing properties.  Trial Tr. Oct. 20, 2008, 101:3-18.  Furthermore, Ms. Denton acknowledged that she had given Mr. Hackerman and Mr. Horton limited powers of attorney to conduct sales and purchases on behalf of SBRC. Trial Tr. Oct. 20, 2008, 116:10-14. Likewise, Mr. Horton had engaged in acquisition and sale of properties on behalf of SBRC by signing as Vice-President. Trial Tr. Oct. 20, 2008, 98:2-8. Def.'s Ex. 21.

Denton's direction along with her testimony regarding the tasks performed by Mr. Horton. Nevertheless, it was not alleged that SBRC was merely a shell.[7]

On September 22, 2005, Corporate Articles of Amendment (Amended Articles) for SBRC were filed and accepted by SDAT. Prepared in someone's – presumably the Defendant Johnson's – handwriting, the Amended Articles provide in relevant part that, "Corey Johnson is to be added as a[n] officer of Company." [8] Pl.'s Ex. 5 ¶ 3. On the first page, the lines underneath the query, "Mail: Name and Address:" were filled in with the information: "Corey S. Johnson 2129 St. Paul St. Baltimore, MD 21218". Pl.'s Ex. 5. On the second page beneath, "Your Return Address" the same street address was given, sans Mr. Johnson's name. Pl.'s Ex. 5 ¶ 6.

The Amended Articles purport to be signed by "Richard Hackerman" as "President" of SBRC. Pl.'s Ex. 5 ¶ 5. However, Mr. Hackerman testified that the signature appearing on the Amended Articles is not his and that the document was signed without either his knowledge or consent. Trial Tr. Oct. 20, 2008, 44:19-21. Thus, there was no dispute that his signature was forged.

Ms. Denton did not appoint Mr. Johnson an officer of SBRC. She did not authorize Mr. Johnson (or anyone else) to prepare and file the Amended Articles nor was she aware of either their existence or filing with SDAT. Defendants' contend, however, that Ms. Denton was not aware of the filing of the Amended Articles because, as she candidly acknowledged, she did not

---

[7] Ms. Denton's stage name is "Pepa" of the recording duo, "Salt and Pepa". Halvaot asserted that the pressing, and allegedly distracting, needs of her entertainment career were relevant to whether SBRC should be estopped from undoing the transaction in question. Halvaot urged that she had relinquished control of SBRC to Mr. Horton. Yet, during cross-examination, Ms. Denton adhered to the position that SBRC was 'managed' by her; meaning that she – and not Mr. Horton – was in control. However, at least in part for the reasons explained in note 11 *infra*, none of the minutiae of the fraudulent scheme came into evidence. Therefore, there was no proof that Mr. Horton masterminded, or even permitted, the scheme to occur.

[8] Ms. Denton testified that Corey Johnson is a friend of Mr. Horton. Trial Tr. Oct. 20, 2008, 78:11-12.

6

regularly check SBRC's mail at the 2129 St. Paul Street address. Trial Tr. Oct. 20, 2008, 116:1-2. They contend that had she been fully engaged she would have learned of the Amended Articles existence and the last fraudulent act – the transfer of real estate described below – could have been averted.

Yet, there was no direct evidence of how the SDAT addressed the recorded Amended Articles for mailing before their transmittal (or even that they were mailed at all) save for the addresses included on the Amended Articles themselves. If they were mailed in the ordinary course, they may have been addressed to SBRC or they may have been addressed to Corey Johnson. The Court therefore cannot find definitively that Ms. Denton was neglectful in not learning of the forged Amended Articles through the mails.

The real property involved in this dispute is located at 806 East 41st Street, Baltimore Maryland 21218 (Real Property). It was originally purchased by the Plaintiff from Amtrust Financial Services on June 2, 2003.  On December 21, 2005, a deed (Deed) conveying the Real Property from SBRC to the Debtor was executed.[9]  Pl.'s Ex. 46.  The Deed indicates that the Real Property was sold for $140,000.

Corey Johnson, as "officer" and "authorized signer" of SBRC, executed the Deed on behalf of SBRC on page two. Pl.'s Ex. 46.  The Deed included a notarized attestation, made under penalties of perjury, whereby Mr. Johnson acknowledged himself to be an officer of SBRC with authority to execute the Deed in that capacity. Pl.'s Ex. 46. These statements were false, as Ms. Denton did not give Mr. Johnson permission to sell the Real Property on behalf of SBRC.  Trial Tr. Oct. 20, 2008, 83:10-17.

---

[9] The Deed is recorded among the land records of Baltimore city at Liber 7305, Page 418.

Ms. Jodi Marlow also testified. At the time of the transaction at issue, she was employed by Phoenix Title and processed the settlement. Among other things, she gathered together the necessary information of record to try and independently confirm the sale's legitimacy. JPMorgan's counsel walked her through a direct examination that explained what she did in that regard.  The following exchanges are with respect to the Amended Articles:

Mr. Troll: Okay. And that is – what is that document?

A.    These are the – this is the document amending the Articles adding Corey Johnson as an officer.

*                    *                    *

A.    We pulled this off of the State Department records.

Q.    And – and why did the – why did you do that? Why did you, being Phoenix, do that?

A.    Because any time an LLC or a corporation sells a property we need proof of who the owners are and who are signing for the property.

Trial Tr. Oct. 21, 2008, 47:6-8; 20-25.

Ms. Marlow was then asked about other necessary and appropriate documents and the disbursal of funds. Then counsel returned to the Amended Articles.

Q.    Did you have any reason to believe that Exhibit No. 1 that we talked about when you first took the stand was a forgery?

A.    No.

Q.    Isn't that something that you normally would check when you – would you call somebody?

A.    Since we obtained it from the State of Maryland, it's all public record.

8

> Q.      Okay. And is that something that you relied on in, in handling this settlement?
>
> A.      Yes.
>
> Q.      And is it customary to rely on the public records when you're doing a settlement?
>
> A.      To the State Department, yes.
>
> Trial Tr. Oct. 21, 2008, 54:8-20.

In other words, the title company's conclusion that the sale was *bona fide* was based upon the corrupt public record; corruption that was caused by the forged Amended Articles. The Court can only infer from Ms. Marlow's testimony that had Mr. Johnson not elevated himself to the position of officer of SBRC through the use of the forged document then the sale of the Real Property to the Debtor would not have occurred. Stated another way, it was the forged document that provided the legal authority for his signature on the Deed. And that allowed the Deed to be ostensibly insulated from a claim of forgery and thus protect subsequent transferees without notice at least insofar as the Maryland cases seem to hold.

Also at settlement, Ms. Matthews executed a $112,000 Purchase Money Deed of Trust in favor of Long Beach Mortgage Company (Long Beach) to finance the sale.[10]  The Settlement Statement provides that $65,963.72 was paid to SBRC but Ms. Denton denied that any funds were actually received. Pl.'s Ex. 10. Her testimony was not refuted by the Defendants. There was no conclusive evidence as to where the net proceeds ended up.[11]

---

[10] WMB (JPMorgan) became the successor in interest to Long Beach.

[11] Neither Mr. Horton nor Mr. Johnson testified at trial. A man identified as Mr. Horton appeared in court the morning of the trial and Halvaot tried to call him as a witness. But Plaintiff objected and since his name was not included on Halvaot's Witness List, he was not permitted to testify. Thus, while the suggestion that Messrs. Horton and Johnson together pulled off the fraud hung over the trial like a haze, there is no evidence in the record of the scheme's factual detail save for the Amended Articles, the Deed and the Settlement Statement.

On December 22, 2006 Ms. Matthews further encumbered the Real Property with a second mortgage to Halvaot in the amount of $30,000. This occurred after the civil action was originally filed in the Circuit Court.

SBRC sought several layers of relief in the Amended Complaint. However, for purposes of this certification, the relevant prayer for relief is SBRC's request to have the transaction set aside, the mortgage liens nullified and the Real Property returned to SBRC free and clear of any claims or interests of either JPMorgan or Halvaot.

## V.     Jurisdiction, Venue and Choice of Law

Removal of this case was appropriate under 28 U.S.C. § 1452(A) and jurisdiction is proper under 28 U.S.C. § 1334(e). Venue is derived from 28 U.S.C. §1409. It is settled that Maryland law must be applied to the substantive dispute. "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). This principal applies whether a federal court is sitting in diversity or addressing state law claims under its pendant jurisdiction. *In re Merritt Dredging Co.*, 839 F.2d 203, 205 (4th Cir. 1988). "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979). While out of state cases were cited for their persuasiveness, there is no dispute that Maryland law controls the outcome of the case.

## VI.     Basis for Certification

A strict interpretation of Maryland law should result in a loss for the Plaintiff. This is so because the Deed itself was not forged. *Harding v. Ja Laur Corp.*, 315 A.2d 132, 134-36 (Md. Ct.

Spec. App. 1974). Mr. Johnson signed his own name to the Deed and made false representations within its text. But the writing itself was not false. The Deed was what it appeared to be – a deed signed by Corey Johnson. *Reese v. State,* 378 A.2d 4, 7 (Md. Ct. Spec. App. 1977).

However, the facts of this case may present cause for a more expansive interpretation of the rule. A forged document of public record – the Amended Articles – was the keystone of the scheme. With that in mind, it seems that a denial of relief to SBRC would be to reject the principle upon which the law of forgery is based – that a forged document has no legal significance and a forger cannot pass good title – albeit by one step removed. Without the Amended Articles, the transaction would not have been consummated and the Deed would not have landed in the safe harbor that a strict reading of the law seems to carve out.

Yet, this Bankruptcy Court is not the proper forum to opine as to whether these circumstances are sufficient to compel a more expansive interpretation of the Maryland rule. This Court cannot find a Maryland reported opinion with the same or even similar facts. Hence the question is certified to the Court of Appeals for the definitive answer.

Maryland follows the common law of forgery. *State v. Reese,* 388 A.2d 122 (Md. 1978); *Reddick v. State,* 148 A.2d 384 (Md. 1959). "Broadly defined, forgery is the fraudulent making of a false writing having apparent legal significance." *State v. Reese*, 388 A.2d at 125.

> A document is not considered false for purposes of the law of forgery merely because it contains a false statement of fact. The falsity required by the common law and the statutes refers to the genuineness of the execution of the document itself; that is, there must be a false making.
>
>         *              *              *
>
> The instrument must purport to be what it is not…As one scholar has phrased it, it is not enough that the writing "tells a lie; the writing itself must be a lie."

11

*Id.* at 127. (citations omitted)

The Court in *Reddick v. State*, borrowed the following definition: "[forgery is] the false making or material alteration, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability." *Reddick,* 148 A.2d at 386.

With respect to the narrower sub-category of forged signatures, the Court of Special Appeals stated in *Reese v. State*:

> It is forgery to sign another man's name to a note, without authority and with the intent to defraud, and thus make the instrument appear to be the note of the person whose name is signed; but it is not forgery for a person to sign his own name to an instrument, and falsely and fraudulently represent that he has the authority to bind another by doing so, or for a person to sign another's name 'by' himself as attorney in fact, for in such a case the instrument is not falsely made, but is just what it purports to be, and the signer is guilty of false pretenses only.

*Reese,* 378 A.2d at 7.

The Defendants relied upon this distinction to make their core argument: that the Deed was not forged as it was what it purported to be; i.e., a deed signed by Corey Johnson.

If a deed is forged it cannot pass good title. *Maskell v. Hill,* 55 A.2d 842 (Md. 1947). If, however, it is procured by fraud then it can pass good title to a BFP without notice. *Harding v. Ja Laur Corp.,* 315 A.2d 132 (Md. Ct. Spec. App. 1974).

As stated in *Harding,*

> The title of a *bona fide* purchaser, without notice, is not vitiated even though a fraud was perpetrated by his vendor upon a prior title holder….A deed obtained through fraud, deceit, or trickery is voidable as between the parties thereto, but not as to a *bona fide* purchaser. A forged deed, on the other hand, is void *ab initio*.

\*            \*            \*

12

> …there can be no *bona fide* holder of title under a forged deed. A forged deed, unlike one procured by fraud, deceit or trickery is void from its inception. The distinction between a deed obtained by fraud and one that has been forged is readily apparent. In a fraudulent deed an innocent purchaser is protected because the fraud practiced upon the signatory to such a deed is brought into play, at least in part, by some act or omission on the part of the person upon whom the fraud is perpetrated. He has helped in some degree to set into motion the very fraud about which he later complains. A forged deed, on the other hand, does not necessarily involve any action on the part of the person against whom the forgery is committed.

*Harding,* 315 A.2d at 135-36.

In the case at bar, there was no direct deception or involvement of Ms. Denton. Instead, the forged Amended Articles were used as the trigger for the fraudulent scheme.

There is non-Maryland case law that lends some support to SBRC's position.

*Unity Banking & Saving Co. v. Bettman,* 217 U.S. 127 (1910) involved the fraudulent transfer of a stock certificate byway of a forged power of attorney. The Supreme Court held, "As against the true owner, a right of property cannot be acquired by means of a forged written instrument relating to such property." *Id.* at 135. Hence, the forgery of an underlying document necessary to the conveyance, as opposed to the title document itself, was sufficient to nullify the transaction.

Likewise, in *McNairy v. Baxter (In re Baxter),* 320 B.R. 30 (Bankr. D.D.C. 2004), Judge Teel held that a deed of trust executed pursuant to a forged power of attorney was void.[12] The

---

[12] The District of Columbia recording statute requires powers of attorney to be recorded in the land records along with the deed when used to consummate the transfer of an interest in land. D.C. Code § 42-101(a) (2001).

13

Court held, "[a] deed cannot be deemed valid based upon a power of attorney that itself is a nullity."[13] *Id.* at 39.

## VII.  Summary

Maryland has adopted the Uniform Certification of Questions of Law Act (the Act) which is codified in Subtitle 6 of Title 12 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland.  Under Section 12-603, the Court of Appeals is authorized to "answer a question of law certified to it by a court of the United States or by an appellate court of another state or of a tribe, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of this State."[14]  Md. Code Ann., Cts. & Jud. Proc. § 12-603 (1996).  Further, "the decision to certify a question to the Court of Appeals rests in the sound discretion of the federal court." *Cecilia Schwaber Trust Two v. Hartford Acc. and Indem. Co.*, 636 F.Supp.2d 481, 491 (D.Md. 2009).

The facts of this case are unique and unusual and in the opinion of this Court raise a serious question as to which rule of law should be applied: that regarding forged instruments or that regarding instruments fraudulently procured.  Thus, I have concluded it is a question that should be answered by Maryland's highest court rather than a bankruptcy judge.  Accordingly, the

---

[13] Plaintiff suggested that the doctrine of fraud in the *factum* should be applied in its favor.  In *Meyers v. Murphy,* 28 A.2d 861 (Md. 1942) Judge Marbury discussed the definition of fraud in the *factum.* The Court stated, "Fraud in the factum is said to arise from the want of identity or disparity between the instrument executed and the one intended to be executed, or from circumstances which go to the question whether the instrument in fact ever had any legal existence." *Id.* at 862. Per the opinion, fraud in the *factum*, as opposed to fraud in the treaty, makes the instrument absolutely void as to third parties.  However, *Meyers* is not on point factually and there is only sparse case law in Maryland regarding the two doctrines and their effect.  Nevertheless, the question arises as to whether the Deed in this case has any legal existence in light of the nexus between it and the forged Amended Articles.

[14] In *In re Chapman*, 68 B.R. 745, 747 (Bankr. D.Md. 1986), Judge Mannes observed that the scope of the then Maryland version of the Act did not include certification of questions from bankruptcy courts.  However, the Act's scope was subsequently expanded and all courts "of the United States" are now included.  Md. Code Ann., Cts. & Jud. Proc. § 12-603 (1996).

14

Court will, by separate order, certify the question raised to the Court of Appeals of Maryland under the Uniform Certification of Questions of Law Act.

cc:     Counsel for Plaintiff, Scotch Bonnett Realty Corporation:
                    J. Michael Broumas
                    8370 Court Avenue, Suite 203
                    Ellicott City, MD 21043

        Counsel for Defendant, Halvaot, LLC.:
                    Martin H. Schreiber, II
                    3600 Clipper Mill Road, Suite 201
                    Baltimore, MD 21211

        Counsel for Defendant, JP Morgan Chase Bank, National Association:
                    Robert Troll
                    O'Malley, Miles, Nylen & Gilmore, PA.
                    11785 Beltsville Drive
                    10th Floor
                    Calverton, MD 20705

        Counsel for Defendant, Tax Lien 2000, LLC.:
                    William Waller
                    Mooring Tax Asset Group, LLC
                    8614 Westwood Center Drive
                    Suite 500
                    Vienna, VA 22182

        Counsel for Defendant, Gerard Vetter:
                    Gerard Vetter
                    100 S. Charles Street, Suite 501
                    Tower II
                    Baltimore, MD 21201

        Defendant, Cateania Matthews, *pro se*:
                    P.O. Box 13410
                    Baltimore, MD 21203

        Defendant, Emora Horton, *pro se*:
                    703 MacDill Road
                    Middle River, MD 21220

Defendant, Corey Johnson, *pro se*:

2129 St. Paul Street
Baltimore, MD 21218

**END OF OPINION**