Bankruptcy Court Case
No. 07-21117-RAG
Chapter 13

IN THE COURT OF APPEALS OF MARYLAND

Misc. No. 4

September Term, 2010

---

SCOTCH BONNETT
REALTY CORPORATION

v.

CATEANIA MATTHEWS
et al.

---

Bell, C.J.
Battaglia
Greene
Murphy
Barbera
Eldridge, John C.
   (retired, specially assigned)
Rodowsky, Lawrence F.
   (retired, specially assigned),

JJ.

---

Opinion by Rodowsky, J.

---

Filed:   January 21, 2011

This case comes to us from the United States Bankruptcy Court for the District of Maryland via the Maryland Uniform Certification of Questions of Law Act, Maryland Code (1974, 2006 Repl. Vol.), §§ 12-601 through 12-613 of the Courts and Judicial Proceedings Article. The question certified is:

> "Does the use of a deed that is neither a forged document, nor signed with a forged signature, but which derives its transactional vitality from forged corporate articles of amendment, render a conveyance of land void *ab initio*, or, is good title transferred to *bona fide* purchasers for value without notice?"

## Facts

The certified question arises out of the facts set forth below. Scotch Bonnett Realty Corporation (SBRC), designated in the certification order as appellant, is a Maryland close corporation, incorporated January 22, 2003. The articles of incorporation were signed by Richard J. Hackerman (Hackerman), a member of the Maryland Bar. He consented to act as resident agent for the corporation. The articles of incorporation provided that SBRC elected to have no board of directors, and that Sandra Denton (Denton) would serve as director until the organizational meeting. The articles established the post office address of the principal office of SBRC to be 2129 St. Paul Street, Baltimore, MD 21218. The address of the resident agent was 116 West University Parkway, Baltimore, MD 21210. The business of SBRC was buying and selling real estate, utilizing Denton's capital that was earned in the entertainment industry as a member of a recording duo. SBRC at one time owned thirteen properties. SBRC has no by-laws, minutes, or resolutions designating corporate officers.

Denton had been married to Emora Horton (Horton), but the parties were divorced in December of 2003. Horton, nevertheless, continued to assist Denton, through SBRC, in buying and selling properties. He would advise Denton of properties that he considered suitable for acquisition, and she would make the decision on behalf of SBRC. If SBRC sold a property, the net proceeds went directly into the corporate bank account on which Denton was the sole signatory. Horton also performed day-to-day management, repair, and upkeep for SBRC properties.

Through Horton, Denton met Corey Johnson (Johnson), a friend of Horton's. At trial, she denied ever having any business dealings with Johnson and denied ever hiring him to do any work for her.

On September 22, 2005, the State Department of Assessments and Taxation (SDAT) received articles of amendment in the name of SBRC. The articles were completed in longhand on a fill-in-the-blanks form. The portion of the form reading, "The charter of the corporation is hereby amended as follows:," was completed by stating, "Corey Johnson is to be added as an officer of Company." In the portion of the form asking by whom the amendment had been approved, there was inserted, "The Director[.] No stock has been issued." The form next recited, "We the undersigned President and Secretary swear under penalties of perjury that the foregoing is a corporate act." Thereunder was a signature line preprinted for "President" on which was signed, "Richard Hackerman." Hackerman testified that the writing was not his signature, and that he had never been president of SBRC. The

- 2 -

certifying court found that the articles of amendment were forged. There was no purported secretary signature on the form. Inserted as the return address for one certified copy of the articles was "2129 St. Paul Street, Balt., MD 21218."

A copy of the SDAT form entitled "CORPORATE CHARTER APPROVAL SHEET" reflects that that agency was paid an additional $90 for expedited service and that the instruction, "Mail: Name and Address," was completed in script reading "Corey S. Johnson, 2129 St. Paul St., Baltimore, MD 21218."

One of the properties owned by SBRC was 806 East 41st Street, Baltimore, MD 21218 (the Property). It had been acquired in April 2003. On December 21, 2005, a deed to the Property was executed in the name of SBRC and signed, "Corey Johnson (Officer)." Grantee under the deed was Cateania Matthews (Matthews). Before a notary public, Johnson acknowledged himself to be an officer of the grantor, fully authorized to execute the deed.[1] SBRC never received any proceeds from the settlement.

The lender at the settlement of Matthews's purchase of the Property was Long Beach Mortgage which later merged with Washington Mutual Bank (WMB). That institution failed and was placed into receivership by the Federal Deposit Insurance Corporation which sold WMB's assets to JP Morgan Chase Bank, National Association (Morgan).

---

[1]The deed was prepared by attorney Joseph Jeffrey Griffith and settlement on the sale was conducted by Phoenix Title & Escrow, LLC of Owings Mills, Maryland, where the deed to Matthews was sent after recording.

### Procedural History

SBRC instituted this adversary proceeding in the Circuit Court for Baltimore City in June 2006. In November 2007, Matthews filed for relief under Chapter 13. In the Bankruptcy Court, SBRC filed a third amended complaint for declaratory and other relief. Included among the defendants were Johnson and Horton, each of whom failed to answer. A fourth amended complaint was filed by SBRC seeking declaratory and other relief against Matthews, Horton, the trustee in bankruptcy, Johnson, a second mortgage lender on the Property, a tax lien, and the holder of the Long Beach mortgage.

The settlement officer who processed the closing on the Property testified in the Bankruptcy Court. She had obtained a copy of the SBRC articles of amendment from the SDAT because, whenever a corporation sells a property, "we need proof of who the owners are and who are signing for the property." She had no reason to think that the articles of amendment were a forgery, and she did not telephone anyone to check behind the articles, inasmuch as they had been obtained off of the public record from the State of Maryland. She testified that it was customary to rely on records of the SDAT when conducting a settlement.

It was stipulated in the Bankruptcy Court that WMB was a *bona fide* purchaser for value. Only Morgan, which claims through WMB, has filed a brief in this Court as an appellee. Because the certified question is directed to the effect of the forgery on the deed,

- 4 -

we assume that Matthews is to be considered a *bona fide* purchaser for value. Nor are we

to consider SBRC or Denton estopped from denying the forgery.[2]

### Legal Background

The premise of the certified question is the Bankruptcy Court's recognition that the

deed to the Property is not a forgery, because Johnson signed his true name to the deed,

whereas the articles of amendment are a forgery, because someone, other than Hackerman,

signed his name to the articles, without Denton's authority. The Bankruptcy Court also

recognized that, in *Harding v. Ja Laur Corp.*, 20 Md. App. 209, 315 A.2d 132 (1974), the

Court of Special Appeals concluded that Maryland law distinguishes between a forged deed

and a deed obtained by false pretenses.

> "The title of a *bona fide* purchaser, without notice, is not vitiated even though
> a fraud was perpetrated by his vendor upon a prior title holder. A deed
> obtained through fraud, deceit or trickery is voidable as between the parties
> thereto, but not as to a *bona fide* purchaser. A forged deed, on the other hand,
> is void *ab initio*."

*Id.* at 213-14, 315 A.2d at 135 (citations omitted).

The *Harding* court further said:

> "A forger, having no title can pass none to his vendee. *James v. Stratton*, 203
> S.W. 386 (Tex. Ct. Civ. App. 1918). Consequently, there can be no *bona fide*
> holder of title under a forged deed. A forged deed, unlike one procured by
> fraud, deceit or trickery[,] is void from its inception. The distinction between
> a deed obtained by fraud and one that has been forged is readily apparent. In

---

[2]Further, because there was no direct evidence whether the SDAT addressed the copy
of the articles of amendment to SBRC or to Johnson, at 2129 St. Paul Street, the Bankruptcy
Court could not find "definitively" that Denton was negligent.

- 5 -

a fraudulent deed an innocent purchaser is protected because the fraud practiced upon the signatory to such a deed is brought into play, at least in part, by some act or omission on the part of the person upon whom the fraud is perpetrated. He has helped in some degree to set into motion the very fraud about which he later complains. A forged deed, on the other hand, does not necessarily involve any action on the part of the person against whom the forgery is committed. So that if a person has two deeds presented to him, and he thinks he is signing one but in actuality, because of fraud, deceit or trickery[,] he signs the other, a *bona fide* purchaser, without notice, is protected. On the other hand, if a person is presented with a deed, and he signs that deed but the deed is thereafter altered *e.g.* through a change in the description or affixing the signature page to another deed, that is forgery and a subsequent purchaser takes no title."

*Id.* at 214-15, 315 A.2d at 136.[3]  *See also Maskell v. Hill*, 189 Md. 327, 55 A.2d 842 (1947).

The certified question is prompted by the Bankruptcy Court's concern over the legal implications of the role of the forged articles of amendment in the transaction with Matthews. That Court's concern was that

"the title company's conclusion that the sale was *bona fide* was based upon the corrupt public record; corruption that was caused by the forged Amended Articles. The Court can only infer from [the settlement officer's] testimony that had Mr. Johnson not elevated himself to the position of officer of SBRC through the use of the forged document then the sale of the Real Property to [Matthews] would not have occurred. Stated another way, it was the forged document that provided the legal authority for his signature on the Deed. And that allowed the Deed to be ostensibly insulated from a claim of forgery and thus protect subsequent transferees without notice at least insofar as the Maryland cases seem to hold."

---

[3]In *Harding*, it was alleged that the otherwise blank page on which the plaintiff signed her name for use in a boundary adjustment document was switched to a deed of her property. This was held to constitute forgery and survived a demurrer by a *bona fide* purchaser.

- 6 -

Undercutting the "ostensibl[e]" insulation of the deed from a forgery claim were, in the Bankruptcy Court's opinion, two decisions applying out-of-state law, *Unity Banking & Savings Co. v. Bettman*, 217 U.S. 127, 30 S. Ct. 488, 54 L. Ed. 695 (1910), and *McNairy v. Baxter (In re Baxter)*, 320 B.R. 30 (Bankr. D.D.C. 2004). *Bettman* arose out of a bankruptcy proceeding in which the Court was applying Ohio law. A corporation had issued a certificate for fifty shares of its stock to Fritz Brothers which, in turn, endorsed the certificate to Richard Fritz. Fritz placed the certificate in the hands of his stockbrokers, solely for the purpose of enabling them to exhibit it to evidence Fritz's creditworthiness. The brokers used the certificate to substitute for other security that they had pledged with their bank. When doing so, the brokers affixed to the certificate a blank power of attorney, bearing the forged signature of Fritz. In the subsequent bankruptcy of the brokers, Fritz sought the return of the certificate, free of any claims, including those of the bank.

The Court held that the bank acquired no interest in the stock represented by the certificate, saying, in part, "As against the true owner, a right of property cannot be acquired by means of a forged written instrument relating to such property." 217 U.S. at 135, 30 S. Ct. at 490, 54 L. Ed. at 698.

*In re Baxter* relied exclusively upon *Bettman* in holding that a deed of trust, executed pursuant to a forged power of attorney, was a nullity. The owner of the subject District of Columbia property was not competent to handle her affairs and had given her son a general power of attorney. In order to convey realty, pursuant to a power of attorney, a statute

- 7 -

required that the power be executed in the same manner as a deed. The son forged his mother's signature to a limited power of attorney that specifically applied to the subject property, both by legal description and street address. A notary public certified that the mother had acknowledged the limited power of attorney. Using the power, the son borrowed on the security of the subject property. In an adversary proceeding in the mother's bankruptcy, the holder of the deed of trust note claimed, by a summary judgment motion, that its lien was valid. The court found no negligence on the lender's part, but summary judgment was denied based on the forgery rule. Citing only *Bettman* on the forgery issue, the court said that "[a] deed cannot be deemed valid based on a power of attorney that itself is a nullity." 320 B.R. at 39.

Thus, the certified question, in essence, asks whether this Court will extend the forgery rule. For the reasons set forth below, we shall not.

### Forgery or False Pretenses?

SBRC challenges the premise of the certified question, contending that the deed to Matthews was not the act of SBRC because Johnson had no authorization to act for it, and that such an unauthorized act constitutes forgery. Morgan correctly points out that the certified question does not ask if the deed was a forged document, and, indeed, the question states that the signature on the deed was not a forgery. Consequently, Morgan contends that we should not address whether Johnson's lack of authority produces a forged deed.

- 8 -

Nevertheless, we shall address SBRC's argument because analysis of it is fundamental to answering the question as asked.

In *Harding*, the Court of Special Appeals looked to the common law of crimes to determine whether the alteration in that civil case constituted forgery, and cited *Smith v. State*, 7 Md. App. 457, 460-61, 256 A.2d 357, 360 (1970), and *Perkins, Criminal Law*, ch. 4, § 8 (2d ed. 1969). *Harding*, 20 Md. App. at 212, 315 A.2d at 134.

Pertinent here is *Reese v. State*, 37 Md. App. 450, 378 A.2d 4 (1977), *aff'd*, 283 Md. 86, 388 A.2d 122 (1978), where Judge Moylan discussed for the court the forgery-false pretenses distinction. The opinion quoted favorably from Clark & Marshall, *The Law of Crimes*, at 845-46 (6th Wingersky ed.), as follows:

> "'[I]t is not forgery for a person to sign his own name to an instrument, and falsely and fraudulently represent that he has authority to bind another by doing so, or for a person to sign another's name "by" himself as attorney in fact, for in such a case the instrument is not falsely made, but is just what it purports to be, and the signer is guilty of false pretenses only.'"

*Reese*, 37 Md. App. at 454, 378 A.2d at 7.

The general rule at common law appears to be that a misrepresentation of authority to sign does not make an instrument false and, thus, not a forgery. In *Gilbert v. United States,* 370 U.S. 650, 82 S. Ct. 1399, 8 L. Ed. 2d 750 (1962), the Court considered whether the petitioner had violated 18 U.S.C. § 495 prohibiting forgery for the purpose of obtaining a sum of money from the United States. Gilbert, an accountant, had come into possession of income tax refund checks for his clients, a husband and wife. He endorsed the checks in

- 9 -

their names, followed by his name, describing himself as "'Trustee.'" Because the case had

been tried on an agency-endorsement theory, the Court treated the endorsement as if it read

"by" Gilbert, "Trustee."

The Court reviewed the common law of forgery, going back to *Regina v. White*, 2

Car. & K. 404, 175 Eng. Rep. 167 (1847), where it was said that "'indorsing a bill of

exchange under a false assumption of authority to indorse it per procuration, is not forgery,

there being no false making.'" *Gilbert*, 370 U.S. at 655, 82 S. Ct. at 1402, 8 L. Ed. 2d at

754. The *Gilbert* Court said that the view of forgery, under which a false assumption of

authority was not forgery, has been followed "in most of the state and federal courts in this

country." *Id.* at 657, 82 S. Ct. at 1403, 8 L. Ed. 2d at 755. The Court noted that the forgery-

false pretenses distinction also had been made in cases construing "forge" in other federal

statutes. In conclusion, the Court said: "Where the 'falsity lies in the representation of facts,

not in the genuineness of execution,' it is not forgery." *Id.* at 658, 82 S. Ct. at 1404, 8 L. Ed.

2d at 756 (quoting *Marteney v. United States*, 216 F.2d 760, 763-64 (10th Cir. 1954), *cert.*

*denied*, 348 U.S. 953, 75 S. Ct. 442, 99 L. Ed. 745 (1955)).[4]

*Gilbert* was the lead citation in *State v. Reese*, 283 Md. at 94, 388 A.2d at 127, for

the proposition that

---

[4]Gilbert held a power of attorney from his clients. Whether his authority included
endorsing checks was disputed and the Supreme Court, for purposes of the appeal,
considered that he had no such authority.

- 10 -

> "[a] document is not considered false for purposes of the law of forgery merely because it contains a false statement of fact. The falsity required by the common law and the statutes refers to the genuineness of the execution of the document itself; that is, there must be a false making."

*Reese* also cited, for that proposition, *Goucher v. State*, 113 Neb. 352, 354, 204 N.W. 967, 968 (1925), where that court said:

> "The decisions are nearly unanimous that the making of a false instrument is not within a criminal statute directed against the false making of an instrument. This is not a mere play on words."

*Reese*, 283 Md. at 94, 388 A.2d at 127.

The argument that SBRC presents here was rejected by the Court of Appeals of New York in 2004. *See People v. Cunningham*, 2 N.Y.3d 593, 813 N.E.2d 891 (2004). There, a consultant for Herkimer Precut, Inc. signed checks, drawn on the corporate account, for personal expenses and was convicted of forgery. The court framed the issue as follows:

> "The People contend that Herkimer Precut is the ostensible maker because its name appears on the check as owner of the account. Further, they argue that because defendant lacked authority to sign company checks, the check in question was not the authentic creation of the company, and a forgery is made out. Defendant counters that the check was an authentic creation of its ostensible maker and that because he signed his own name, he cannot be guilty of forgery: as the ostensible maker, he did not pretend to be anyone other than himself -- the actual maker."

*Id.* at 597, 813 N.E.2d at 894.

Cunningham's conviction was reversed. Although forgery was a statutory crime in New York, the statute had not abrogated the "classic approach to forgery." *Id.* at 596, 813 N.E.2d at 893. The court cited numerous decisions from throughout the country, including

- 11 -

*Gilbert*, 370 U.S. 650, 82 S. Ct. 1399, 8 L. Ed. 2d 750, and concluded that "authority and authenticity are not the same thing." *Cunningham*, 2 N.Y.3d at 599, 813 N.E.2d at 895.

For other cases holding that signing a check in one's true name, purportedly as agent for the drawer or payee, but without authority to do so, is not forgery, unless a statute so provides, *see United States v. Hunt*, 456 F.3d 1255 (10th Cir. 2006); *United States v. Young*, 282 F.3d 349 (5th Cir. 2002); *United States v. Jones*, 553 F.2d 351 (4th Cir.), *cert. denied*, 431 U.S. 968, 97 S. Ct. 2928, 53 L. Ed. 2d 1064 (1977); *Asher v. United States*, 480 F.2d 580 (6th Cir. 1973); *State v. Kinder*, 315 Mo. 1314, 290 S.W. 130 (1926); *Dexter Horton Nat'l Bank v. U.S. Fid. & Guar. Co.*, 149 Wash. 343, 270 P. 799 (1928); *Barron v. State*, 12 Ga. App. 342, 77 S.E. 214 (1913).[5]

---

[5]In *Attorney Grievance Comm'n v. James*, 333 Md. 174, 634 A.2d 48 (1993), the attorney for a probationer received from his client a cashier's check, sent from California, for restitution that was payable to the Department of Parole and Probation. Counsel for the probationer delivered the check to the respondent, James, the attorney for the victim, arguably because the written policy of the Department of Parole and Probation required restitution checks to be certified. James deposited the check to his escrow account, endorsing the check "'Division of Parole & Probation Md – Pay to escrow account of Richard A. James Attorney Acc # 58-1070-7.' James subscribed that endorsement by what he admitted is his signature." *Id.* at 179, 634 A.2d at 50.

In the disciplinary complaint against James, we said that he had violated former Article 27, § 44(a) that prohibited forging an endorsement of any bill of exchange with intent to defraud. We said that the three elements of forgery, as delineated in *State v. Reese*, 283 Md. 86, 90, 388 A.2d 122, 125 (1978), were satisfied. Referring to the second element, *i.e.* that the writing must be false, we quoted. R. Perkins, *Perkins on Criminal Law* 346 (2d ed. 1969), and said: "[O]ne of the three most common ways of making a false writing is 'placing the name of another on the back of a genuine instrument so that it appears to be his (continued...)

- 12 -

SBRC refers us to *Radisson Properties, Inc. v. Flamingo Groves, Inc.*, 767 So. 2d 587 (Fla. App. 2000), where the court held that a deed from the Radisson corporation was void because it was signed by a former president of the entity who had no authority to do so. The grantee mortgaged the property to a lender who claimed to be a *bona fide* purchaser protected by Florida Statutes § 692.01, reading as follows:

> "**Conveyances by corporations.** – Any corporation may execute instruments conveying, mortgaging, or affecting any interest in its land by instruments sealed with the common or corporate seal and signed in its name by its president or any vice president or chief executive officer. Assignments, satisfactions, or partial releases of mortgages and acquittances for debts may be similarly executed by any corporate officer. No corporate resolution need be recorded to evidence the authority of the person executing the deed, mortgage, or other instrument for the corporation, and an instrument so executed shall be valid whether or not the officer signing for the corporation was authorized to do so by the board of directors, in the absence of fraud in the transaction by the person receiving it. In cases of fraud, subsequent transactions with good faith purchasers for value and without notice of the fraud shall be valid and binding on the corporation."

The court held that the statute did not apply because the former president of the grantor did not occupy one of the offices enumerated in the statute. Further, because he lacked actual authority under the statute to execute the deed, it was "void," so that it was unnecessary for

---

[5](...continued)
indorsement thereof,' without the authority to do so." *James*, 333 Md. at 182, 634 A.2d at 52.

It made no difference in *James* whether the unauthorized endorsement constituted forgery or false pretenses, and no argument was advanced based on that distinction. Consequently, this Court had no occasion to focus on whether, by subscribing his name, under the endorsement, James indicated that he was representing himself to be an agent of the Department of Parole and Probation.

- 13 -

the court to discuss whether the lender was a *bona fide* purchaser. The reasoning of *Radisson Properties* seemingly rests on a negative implication from the inapplicability of Florida Statutes § 692.01. More to the point here is that the decision does not hold that the purported deed in the name of the grantor corporation was void on the ground that it was a forgery.

Forging is one of the two principal bases for finding a deed to be void. As stated by a leading text,

> "[t]he void/voidable distinction plays a central role in the protection under the recording acts: a person otherwise qualifying as a bona fide purchaser under the recording act receives no protection under a 'void' deed. On the other hand, a person otherwise qualified as a bona fide purchaser for value does receive protection in purchasing from one whose title is merely 'voidable.' Deeds which appear to be valid on their face, but turn out to be void, present insurmountable off-the-record risks for persons relying on the state of record title. It should not be surprising that practically all of the defects discussed in this section present instances of voidable title, not void. The two classic cases of 'void' deeds are those involving lack of delivery and forgery."

9 *Thompson on Real Property* § 82.12, at 650-51 (2d Thomas ed. 1999).

This Court has recognized the void/voidable distinction in the real property arena and articulated it as a distinction between fraud in the *factum* or fraud in the "treaty," *i.e.,* in the inducement. In *Meyers v. Murphy*, 181 Md. 98, 28 A.2d 861 (1942), involving a release, allegedly obtained by fraud, of a mortgage, this Court said:

> "No question arises in the case as to the rights of third parties, so that it becomes unnecessary to consider whether the fraud claimed is fraud in the *factum* or fraud in the treaty. Fraud in the *factum* is said to arise from the want of identity or disparity between the instrument executed and the one intended

- 14 -

to be executed, or from circumstances which go to the question whether the instrument in fact ever had any legal existence. Fraud in the treaty is a term used to describe a situation where a person is induced by some fraudulent representation or pretense to execute the very instrument which is intended to be executed, for example, where a person who can read neglects to read a paper because of some false representation and signs it with a misapprehension as to the contents. The difference between the two kinds of fraud becomes important only in relation to third parties, because fraud in the *factum* makes the instrument absolutely void, whereas fraud in the treaty renders it voidable and brings into play the equitable principle that where one of two innocent parties suffer from the act of the third, he who has enabled such third person to occasion the loss must sustain it."

*Id.* at 99-100, 28 A.2d at 862.

Against the foregoing background, we turn now to the question of whether the forged articles of amendment were a fraud in the *factum* of the deed that rendered it void *ab initio*.

### Analysis

For a number of reasons, the forged signature on the articles of amendment does not void the deed to Matthews *ab initio*. First, the articles of amendment are not comparable to the powers of attorney involved in the *Bettman* and *Baxter* cases that caused concern to the certifying Bankruptcy Court. In *Bettman*, the power of attorney related specifically to fifty shares of the issuer corporation, the certificate for which was attached to the power of attorney. Because the plaintiff had obtained the right to the shares by endorsement to him of the stock certificate, the power of attorney became the instrument for effecting the transfer, upon default, of purported title from the forger-broker to the pledgee-bank. In that sense the power of attorney is analogous to a deed.

- 15 -

*Baxter* was decided under District of Columbia law under which forgery is a statutory

offense. *See Driver v. United States*, 521 A.2d 254, 258 (D.C. 1987) (holding that the

consolidated theft statute carries forward the prior forgery statute that included "writings that

[are] 'genuine,' but nevertheless completed without authorization and with the intent to

defraud").[6] Further, in *Baxter*, there was a limited power of attorney, for the conveyance of

the specific real estate, that was required by statute to be recorded with the deed by the

purported attorney in fact in order to effect the transfer.

We need not express any opinion on the efficacy under Maryland law of a common

law forgery in a power of attorney to convey realty in the true name of the purported attorney

in fact. That is because the fraudulent instruments that tainted the transfers in the *Bettman*

and *Baxter* cases were more closely related to the specific transfers in those cases than are

the articles of amendment in the instant matter. There is no requirement under Maryland law

that a corporate officer who is authorized to execute, on behalf of a corporation, an

instrument conveying real property be identified in the corporate charter. With respect to

charter requirements peculiar to close corporations, Maryland Code (1975, 2007 Repl. Vol.),

§ 4-201(b) of the Corporations and Associations Article (CA), requires only that the election

to be a close corporation be contained in the charter, or added by amendment. The general

corporation statute *permits* articles of incorporation to include

---

[6]In Maryland, forgery is omitted from the list of common law crimes that are
embraced by the consolidated theft statute. *See* Maryland Code (2002), § 7-102(a) of the
Criminal Law Article.

"[a]ny provision not inconsistent with law that defines, limits, or regulates the powers of the corporation, its directors and stockholders, any class of its stockholders, or the holders of any bonds, notes or other securities that it may issue[.]"

CA § 2-104(b)(1).

In an ordinary business corporation, as between himself and the corporation, the authority of an officer or agent of the entity is as provided for in the by-laws or determined from time to time by resolution of the board of directors.  CA § 2-414(a).[7]

We are also dissuaded from expanding the common law forgery rule in the area of conveyancing by the strong public policy favoring *bona fide* purchasers for value.  This Court said that

> "[a] mortgagee is treated as a purchaser, and 'where title is perfect on its face and no known circumstances exist to impeach it, or put a purchaser on inquiry, one who buys *bona fide* and for value occupies one of the most highly favored positions in the law.' *Seldner v. McCreery*, 75 Md. 287, 296, 23 A. 641, 643 [(1892)]; *Economy Sav. Bank v. Gordon*, 90 Md. [486], 504, 45 A. 176, 48 L.R.A. 63 [(1900)]."

*Irvington Fed. Sav. & Loan Ass'n v. West*, 194 Md. 211, 221, 71 A.2d 1, 5 (1950).

After the Bankruptcy Court certified its question to us, this Court decided *Julian v. Buonassissi*, 414 Md. 641, 997 A.2d 104 (2010).  There, the issue was whether a deed of trust that violated the Protection of Homeowners in Foreclosure Act was void *ab initio* or whether a *bona fide* purchaser for value was protected.  In holding that the latter prevailed,

---

[7]We do not imply that this section exclusively states the sources of authority.  It is a question of actual authority between the corporation and the officer or agent.  Section 2-414(a) deserves mention here because it makes no reference to the charter.

we quoted extensively and approvingly from *Harding*.[8] Explaining our approval of that passage in *Harding*, we said:

> "The distinction between a void contract and a voidable one is especially important in situations involving deeds; once a deed is considered void *ab initio* or of no legal effect, there are lasting consequences to everyone in the subsequent chain of title. As a result, we have been circumspect at common law in finding a deed void *ab initio* and have *limited our rulings* regarding voidness to circumstances that go to the face of the deed, *e.g.*, forgery. *See Maskell v. Hill*, 189 Md. 327, 335, 55 A.2d 842, 845 (1947) (holding that a forged deed is a nullity); *see also Harding*, 20 Md. App. at 214, 315 A.2d at 135 ("A forged deed ... is void *ab initio*."). In *Harding*, our intermediate appellate court discussed how a forged deed, void from inception, does not protect *bona fide* purchasers[.]"

*Julian*, 414 Md. at 668, 997 A.2d at 119-20 (emphasis added).

In the instant matter, the purpose of forging Hackerman's name to the articles of amendment, in which Hackerman purportedly swore under the penalties of perjury that the articles were the corporate act of SBRC, was to induce Matthews, the title company, and the original lender into believing that Johnson was authorized to sign a conveyance of the Property. If similar representations, with apparent credibility, were made orally, there could be no contention that the conduct constituted a forgery. Were this Court to adopt a rule which recognized that written misrepresentations that form part of the inducement for entering into a real estate transfer can have the effect of rendering the conveyance void *ab initio*, the rule would have to be restricted to fraudulent inducements that are the proximate,

---

[8]Specifically, this Court adopted the passage from *Harding*, 20 Md. App. at 214-15, 315 A.2d at 136, quoted *supra*.

or real, or efficient causes of the transaction. This would inject uncertainty into the law of conveyancing, beyond that already existing under the present rule under which a forged deed is void *ab initio*. Such a rule would turn into a jury question whether fraud in the inducement voided a deed *ab initio* and destabilize the predictability of result for *bona fide* purchasers for value. Stability of the law is particularly desirable in the field of real property law. A property owner's title should not be at risk that a grantor in the chain of title decides that the act of granting has been induced by a written misrepresentation, even if the misrepresentation includes a forged signature.

In addition, because of the close relationship between Maryland common law forgery and the forgery that voids a conveyance, we should be "extremely reluctant" to expand the crime of forgery. As this Court said in *State v. Reese*, 283 Md. at 97, 388 A.2d at 129:

> "However flexible and forward-looking the common law may be and indeed ought to be in other contexts, *see State v. Williamson*, 282 Md. 100, 114-15, 382 A.2d 588[, 596] (1978) (Levine, J., concurring), courts should, for reasons rooted primarily in constitutional law, be extremely reluctant to enlarge the limits of *substantive* criminal liability through the device of ascertaining and declaring the common law."

### Conclusion

For all the foregoing reasons, we answer the certified question as follows:

The use of a deed that is neither a forged document, nor signed with a forged signature, but which derives its "transactional vitality" from forged corporate articles of

amendment, does not render a conveyance of land void *ab initio*; rather, good title is transferred to *bona fide* purchasers for value without notice.

**CERTIFIED QUESTION OF LAW ANSWERED AS SET FORTH ABOVE.**

**COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**

## COURT OF APPEALS OF MARYLAND

### Misc. No. 4, September Term, 2010

| | | |
|---|---|---|
| SCOTCH BONNETT REALTY CORPORATION | * | J. Michael Broumas, Esquire |
| | * | Attorney for Appellant |
| v. | * | |
| CATEANIA MATTHEWS et al. | * | Martin H. Schreiber, II, Esquire |
| | | Robert Troll, Esquire |
| | * | William Waller, Esquire |
| | | Gerard Vetter, Esquire |
| | * | Attorneys for Appellees |

## NOTICE TO COUNSEL

STATE OF MARYLAND, ss:

I hereby certify that on the twenty-seventh day of May, 2010, I received from the United States Bankruptcy Court for the District of Maryland a request from that Court that the Court of Appeals of Maryland answer a certified question of law.

Based upon this request, the case has been scheduled for oral argument during the November Session of Court. The brief of the Appellant shall be filed on or before July 6, 2010, and the brief of the Appellees shall be filed on or before August 5, 2010.

Bessie M. Decker
Clerk